COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Agee and Senior Judge Overton
Argued at Alexandria, Virginia


CHARLES ELTON MURPHY
                                    MEMORANDUM OPINION* BY
v.    Record No. 1558-01-4           JUDGE NELSON T. OVERTON
                                         MARCH 12, 2002
COMMONWEALTH OF VIRGINIA/
 DEPARTMENT OF MOTOR VEHICLES


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Michael A. Kernbach (Burgess, Locklin,
          Kernbach & Perigard, PLLC, on brief), for
          appellant.

          Scott John Fitzgerald, Assistant Attorney
          General (Randolph A. Beales, Attorney
          General; Judith Williams Jadgmann, Deputy
          Attorney General; Gregory E. Lucyk, Senior
          Assistant Attorney General, on brief), for
          appellee.


     On appeal from a decision of the Workers' Compensation

Commission (the commission) denying his application for

benefits, Charles Murphy contends:  (1) the evidence was

insufficient to support the commission's decision that the

presumption in Code § 65.2-402(B) did not apply under Murphy's

circumstances; and (2) the commission erred in holding that

Murphy was not a member of the State Police Officers Retirement

System (SPORS), pursuant to Code § 51.1-200, so as to trigger

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

the presumption in Code § 65.2-402(B).  Finding no error, we affirm the commission's decision.

BACKGROUND

Murphy began employment with the Department of State Police on May 1, 1969.  In 1991, he obtained the position of Director of Investigations for the Department of Motor Vehicles (DMV).  On May 8, 1998, seven years after leaving the state police and joining DMV, Murphy suffered a transient ischemic attack (TIA)[1] which disabled him from work.

Murphy filed a claim with the commission on July 31, 1998, alleging a stroke, TIA and hypertension as occupational diseases for which he sought temporary total and temporary partial disability benefits.

On November 1, 1998, Murphy retired from DMV.  He began receiving retirement benefits shortly thereafter.

The deputy commissioner conducted an evidentiary hearing (the first hearing) on October 18, 1999.

On December 22, 1999, the deputy commissioner issued an opinion concluding, inter alia, that Murphy was not a member of SPORS at the time of his hypertension diagnosis and TIA and, therefore, he was not entitled to the presumption in Code § 65.2-402(B).

---

[1] Murphy's physician described a TIA as "a warning sign of a stroke."

- 2 -

Murphy appealed, and on July 31, 2000, the commission vacated the deputy's opinion. It declared that the "determinative issue in whether the presumption applies is whether [Murphy] is a member of SPORS." The commission conceded it was at a "disadvantage in attempting to analyze the various state pension programs," so it remanded "the case for evidence directly from SPORS as to whether or not [Murphy] is a member."

On October 6, 2000, the deputy commissioner conducted another evidentiary hearing (the second hearing). In his October 27, 2000 opinion, the deputy relied on additional evidence presented at the second hearing to hold that Murphy was neither a member of SPORS while employed at DMV nor a SPORS member at the time of his retirement from DMV. He found the testimony of one witness, Donna Blatecky, "very persuasive" and relied on her expertise in finding that Murphy was not a member of SPORS when he suffered his condition.

Murphy appealed the deputy's decision to the full commission. In its June 5, 2001 opinion, the commission found that Murphy "ceased being a member of SPORS when his former employer stopped making contributions to his SPORS membership account (June 1, 1991), and [Murphy] accepted employment with DMV." Thus, after June 1, 1991, Murphy was a member of the Virginia Retirement System (VRS). The commission also found that, even if Murphy was a member of SPORS at the time so as to entitle him to the presumption, the greater weight of the

- 3 -

evidence established that Murphy's condition was caused by stress from his work at DMV rather than his former work with the state police and the presumption was therefore rebutted.

ANALYSIS

On appeal, we view the evidence in the light most favorable to the prevailing party below. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). "The commission's findings of fact will be upheld on appeal if they are supported by credible evidence." Uninsured Employer's Fund v. Clark, 26 Va. App. 277, 280, 494 S.E.2d 474, 475 (1998).

Code § 65.2-402(B) contains the presumption that Murphy wanted the commission to apply to its disability determination. That code section provides, in pertinent part, that

> any condition or impairment of health of
> . . . any member of the State Police
> Officers Retirement System, . . . caused by
> hypertension or heart disease, resulting in
> total or partial disability shall be
> presumed to be an occupational disease
> suffered in the line of duty that is covered
> by this act unless the contrary be shown by
> a preponderance of competent evidence.

Code § 65.2-402(B).

Code § 51.1-125(B) provides that "[n]o person shall hold more than one membership in the retirement system at any one time with respect to any of the benefits provided under this title. Any person employed in more than one position resulting in membership shall elect one position on which his membership shall be based."

- 4 -

Code § 51.1-206 governs service retirement allowances for members of SPORS. Subsection (A) sets forth the formula for establishing a member's "annual retirement allowance, payable for life." Subsection (B) provides that a retiree with at least twenty years of service qualifies for a supplement, which terminates at age sixty-five when the retiree would begin receiving Social Security benefits.

Blatecky testified at the second evidentiary hearing. She is Assistant Director for Benefit Programs and Services for the VRS, and is "responsible for the departments that administer the benefits under the Retirement System which include . . . all retirements under all retirement plans sponsored by the Virginia Retirement System." Blatecky explained that SPORS is one of four retirement plans administered by the VRS. Blatecky explained that "SPORS is a separate retirement system, has a separate [higher] employer contribution rate . . . [that] is different than that for other state agencies."

After reviewing Murphy's records relating to VRS and SPORS, Blatecky testified that Murphy was a member of SPORS from 1969 until the end of May 1991. On June 1, 1991, Murphy "began to be reported under the Department of Motor Vehicles." While at DMV, "he had an inactive record or inactive membership" with SPORS. According to Blatecky, DMV employees are "not eligible to have their employees [covered] under the SPORS system." Blatecky explained that, had Murphy been employed by the state police and

- 5 -

by DMV, Code § 51.1-125(B) would have required him to elect either VRS or SPORS for his retirement coverage. However, Murphy did not have dual employment because VRS records showed that DMV "began to pick up and contribute on [Murphy's] behalf [to VRS] and [the] State Police no longer contributed for him [through SPORS]." Blatecky added that, by virtue of Murphy's twenty-plus years as a state police officer, he had become vested in SPORS' hazardous duty supplement; therefore, the hazardous duty supplement, which Murphy has been receiving as a vested SPORS member, is based on Murphy's service and contributions from 1969 to 1991. Blatecky explained there was no break in service during the time Murphy left the state police and joined DMV, but she noted a distinct change in 1991, at which time DMV began making contributions toward Murphy's retirement and the state police ceased making any contributions.

By letter dated June 10, 1998, Dr. Jennifer Brown, Murphy's treating physician, wrote that she has been treating Murphy for stress-related hypertension. Dr. Brown opined that "his work is giving him undue stress and causing elevated blood pressure," for which he is "seeking a medical discharge." Dr. Brown felt "that this is certainly justified."

The commission's factual findings are supported by credible evidence, including Dr. Brown's medical opinion and Blatecky's analysis of Murphy's employment records and records of employer retirement contributions made on behalf of Murphy.

- 6 -

Based upon that evidence, the commission could reasonably conclude that Murphy was no longer a member of SPORS after June 1, 1991 and that his condition was caused by stress from his duties at DMV, not from his previous work with the state police.

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>